IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN VLASICH, | 1: 99-CV-6472 AWI WMW P |
| Plaintiff, | AMENDED PRETRIAL ORDER |
| | Telephonic Trial Confirmation Hearing:<br>September 22, 2008, at 3:30 p.m. |
| v. | |
| | Motions In Limine Hearing:<br>September 30, 2008<br>8:30 a.m., Courtroom 2 |
| DR. HOFFMAN, | |
| Defendant. | Trial:  September 30, 2008<br>9:00 a.m., Courtroom 2 |

Plaintiff Steven Vlasich, an inmate in the custody of the California Department of Corrections, brings this civil rights action against a doctor for violations of his civil rights and medical malpractice.   At issue in this action is whether Defendant was deliberately indifferent to Plaintiff's serious medical needs on April 19, 1999 in violation of Plaintiff's Eighth Amendment rights.

Because the trail date has been changed, the court now issues this Amended Pretrial Order.

I.  Jurisdiction and Venue

The court has subject matter jurisdiction over this federal civil rights action.  28 U.S.C. § 1331.  Venue is proper because the conduct allegedly occurred in this judicial district.

II.   Jury Trial

   All parties request trial by jury.  This action shall be tried by a jury of eight.

III.  Facts

  A.  Undisputed Facts

   1.  Plaintiff is a prisoner in the custody of the California Department of
      Corrections and Rehabilitation (CDCR.)

   2.  Plaintiff has chronic hepatitis C.

   3.  Plaintiff underwent a needle biopsy of the liver at CSP-COR Hospital on
      April 6, 1999.  Defendant Hoffman had no involvement in the biopsy.
      Plaintiff was returned to his cell after the biopsy.

   4.  Plaintiff was examined by Medical Technical Assistant (MTA) Lemos at
      his cell on April 19, 1999.

   5.  Plaintiff was later taken to the CSP-COR Emergency Room (ER).

   6.  Defendant Hoffman was the physician on call for the CSP-COR
      Emergency Room.

   7.  Defendant Hoffman observed Plaintiff in the emergency room.

   8.  Plaintiff was later prescribed Tylenol and returned to his cell.

   9.  On April 20, 1999, Plaintiff was taken to the E.R.  Plaintiff was later
      transported to San Joaquin Community Hospital (SJCH) in Bakersfield for
      evaluation and treatment.

   10.  Plaintiff underwent an exploratory laparotomy on April 20, 1999, at San
      Joaquin Community Hospital.

  Plaintiff's Additional Proposed Undisputed Facts

   1.  Plaintiff had fleeting discomfort in his right side and arm after the biopsy;
      This discomfort vanished after approximately five minutes.

   2.  Doctor Robertson verbally instructed Plaintiff that if Plaintiff felt any

acute pain or breathing problems after being released Plaintiff should immediately request emergency care because there was a possibility of pain, bile leakage, and hemorrhage that can be so severe as to require an operation.

3.   Plaintiff had no pain, nausea or breathing problems for the next 12 days following the April 6, 199 biopsy.

4.   On April 19, 1999, Plaintiff started having pain in his liver area, which progressively became worse until he could not breathe properly.

5.   When MTA Lemos evaluated Plaintiff MTA Lemos found that Plaintiff's breathing was labored and his abdomen tender when touched.   Plaintiff told MTA Lemos that he had severe pain shooting from his back to his liver and that he had had a liver biopsy approximately one and a half weeks previously.

6.   MTA Lemos called the prison emergency room and told Nurse Gary Rogers that Plaintiff had labored breathing, that he was unable to hear any lung sounds, that Plaintiff had acute pain, and that Plaintiff was in need of a doctor.   Nurse Rogers advised Defendant of these facts, and Defendant told Rogers to tell MTA Lemos not to bring Plaintiff to the E.R.

7.   Officer Rojas and Officer Baruvdola agreed to push Plaintiff in a wheelchair to the E.R. despite the doctor's orders.

8.   Once in the E.R., Nurse Rogers documented Plaintiffs labored breathing, nausea, acute pain, etc.

9.   Defendant observed Plaintiff for approximately two hours, Defendant prescribed Tylenol, and wrote on Plaintiff's medical reports that Plaintiff was malingering.

10.   Plaintiff was taken back to his cell via wheelchair.  Plaintiff stayed up all

3

night in extreme pain.   All of his symptoms progressively got worse.

11.     At approximately 5:00 a.m. on April 20, 1999, Plaintiff yelled for help. When MTA Lemos arrived, Plaintiff fell, hit his head, and vomited.

12.     When Plaintiff was taken to the E.R., Defendant physically examined Plaintiff and found Plaintiff to be temporarily in deep shock.

13.     At San Joaquin Community Hospital Plaintiff was given numerous blood transfusions.

14.     During surgery, it was discovered that Plaintiff had a large laceration on his liver.   Numerous blood clots were excavated from Plaintiff's abdominal cavity.

15.     On April 26, 1999, Plaintiff was returned to Corcoran.  Defendant physically examined Plaintiff and admitted Plaintiff to the prison hospital. Defendant denied that he believed Plaintiff was faking his pain and illness on April 19, 1999.

Defendant's Proposed Undisputed Facts

1.     Plaintiff was convicted of assault with a firearm on October 8, 1992, and was convicted of assault-by-prisoner with great bodily injury on December 10, 1998.

2.     Plaintiff has been incarcerated at California State Prison-Corcoran (CSP-COR) since March 13, 1996.

3.     Plaintiff was taken to the E.R. with complaints of discomfort in the area of the liver.  Defendant Hoffman was the physician on call for the CSP-COR Emergency Room, and observed the Plaintiff in the emergency room.

B.  Disputed Facts

Plaintiff's Disputed Facts

1.     Whether Plaintiff's documented symptoms on April 19, 1999 were

4

common or uncommon.

2.     Whether Plaintiff complained of severe pain in his liver area.

3.     Whether Defendant refused to physically examine Plaintiff on April 19, 1999.

4.     Whether Plaintiff pleaded with Defendant to examine him and help him.

5.     Whether Plaintiff was in apparent pain at times while Defendant observed him.

Defendant's Disputed Facts

1.     The nature and severity of Plaintiff's medical condition and symptoms at the time he was examined by MTA Lemos on April 19, 1999.

2.     Whether Plaintiff's medical condition and symptoms on April 19, 1999, required his transportation to the CSP-COR Emergency Room.

3.     The nature of Plaintiff's actions in demanding to be transported to the CSP-COR Emergency Room on April 19, 1999.

4.     The nature and severity of Plaintiff's apparent medical condition and symptoms while at the CSP-Cor Emergency Room on April 19, 1999.

5.     Whether Defendant Hoffman ignored or refused to attend to Plaintiff in the CSP-Cor Emergency Room on April 19, 1999.

6.     The nature of Plaintiff's actions demanding medical treatment while in the CSP-Cor Emergency Room on April 19, 1999.

7.     The nature and severity of Plaintiff's medical condition and symptoms during the night of April 19/20, 1999.

8.     The nature and severity of Plaintiff's apparent medical condition and symptoms while at the CSP-Cor Emergency Room on April 20, 1999.

9.     Whether Plaintiff's medical condition would have required transportation to and medical surgical intervention at SJCH regardless of Defendant

5

Hoffman's actions at the CSP-Cor Emergency Room on April 19, 1999.

## C.  Disputed Evidentiary Issues

### Plaintiff's Evidentiary Issues

1.   Plaintiff believes there are going to be numerous disputed evidentiary issues, especially regarding Defendant's apparent admission that he committed fraud on April 19, 1999 when he wrote in Plaintiff's medical reports that Plaintiff was malingering, but denies he believed Plaintiff was faking his pain and illness.

2.   Plaintiff will request a motion in limine if Defendant attempts to admit Plaintiff's prior convictions.

### Defendant's Evidentiary Issues

1.   Declarations of other inmates regarding their experiences relating to liver biopsy procedure is irrelevant to Plaintiff's claim, hearsay, and inadmissible.

2.   Plaintiff's proposed exhibits, including newspaper articles regarding the CDCR medical system and receiver, medical articles obtained from the internet, and the Hippocratic Oath are irrelevant to Plaintiff's claim, hearsay, and inadmissible.

3.   Medical opinion testimony by Plaintiff including testimony regarding the standard of care in the medical community is inadmissible since Plaintiff does not possess the knowledge, skill, experience, training or education under Federal Rule of Civil Procedure 702 to provide this testimony.

4.   The doctrine of res ipsa loquitur is not applicable to Plaintiff's medical malpractice claim.

The parties may raise these issues through a motion in limine.   The briefing schedule for a motion in limine is set forth below.

IV.  Relief Sought

Plaintiff requests a declaratory judgment stating that Defendant violated Plaintiffs' constitutional rights.   Plaintiff seeks $200,000 in compensatory damages for pain, suffering, emotional distress, humiliation, etc.   Plaintiff seeks $250,000 in punitive damages.   Plaintiff also seeks costs.

V.  Points of Law

A.  Eighth Amendment Medical Care

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'"  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate  indifference to serious medical needs.  McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

B.  Medical Malpractice

"The elements of a cause of action for medical malpractice are: (1) a duty to use

7

such skill, prudence, and diligence as other members of the profession commonly possess and

exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent

conduct and the injury; and (4) resulting loss or damage."  Johnson v. Superior Court, 143

Cal.App.4th 297, 305 (2006); see also Thomas v. Hickman, 2007 WL 470611, *13 (E.D.Cal.

2007); Avivi v. Centro Medico Urgente Medical Center, 159 Cal.App.4th 463, 468 n.2 (2008).

"[M]edical personnel are held in both diagnosis and treatment to the degree of knowledge and

skill ordinarily possessed and exercised by members of their profession in similar

circumstances."  Hutchinson v. United States, 838 F.2d 390, 392-93 (9th Cir. 1988) (internal

citations omitted).

C.  Res Ipsa Loquitur

To obtain relief under the doctrine of res ipsa loquitur, the plaintiff must present

evidence of three conditions: (1) The injury must be the kind which ordinarily does not occur in

the absence of someone's negligence; (2) The injury was caused by an instrumentality in the

exclusive control of the defendant; and (3) The injury was not due to any voluntary action or

contribution on the part of the plaintiff.   Brown v. Poway Unified School Dist., 4 Cal.4th 820,

825 (1993); Elcome v. Chin, 110 Cal.App.4th 310, 316-17 (2003).  When these prerequisites are

met, the trier of fact is allowed to assume the existence of the presumed fact unless the defendant

presents evidence to the contrary.  See Cal. Evid. Code, § 604(b); Brown, 4 Cal.4th at 826.

> As a general rule, res ipsa loquitur applies where the occurrence of the injury is of
> such a nature that it can be said, in the light of past experience, that it probably
> was the result of negligence by someone and that the defendant is probably the
> person who is responsible. In determining whether such probabilities exist with
> regard to a particular occurrence, the courts have relied both on common
> knowledge and on expert testimony.

Brown, 4 Cal.4th at 324.

D.  Punitive Damages

Punitive damages are appropriate in a section 1983 action "'when the defendant's

conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous

indifference to the federally protected rights of others.'" <u>Kennedy v. Los Angeles Police Dept.</u>, 901 F.2d 702, 707 (9th Cir.1989) (quoting <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1971)).

Punitive damages are available under California law "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a).

## VI.  Abandoned Issues

None.

## VII.  Witnesses

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

### A.  Plaintiff's Witnesses

Robert Sillen

Nurse Gary Rogers

Correctional Officer J.R. Baruvdola

Correctional Officer Rojas

MTA Lemos

Dr. Byron Mui

Dr. R. Rodriguez

Dr. D. Martinez

Plaintiff Steven Vlasich

Defendant Dr. Hoffman

### B.  Defendant's Witnesses

Plaintiff Steven Vlasich

1       Defendant Dr. Hoffman

2       MTA Lemos

3       C/O M. Rojas

4       C/O Baruvdola

5       G. Roberts, R.N.

6       W. McGuinness, M.D.

7       C. Robertson, M.D.

8       Byron Mui, M.D.

9       R. Rodruguez, M.D.

10      S. Williams, R.N.

11      C. Jenkins, E.D.T.

12      Defendant also states that he wishes to call the unidentified Custodian of Records

13 for the CDC.  Because Defendant has not identified the name of the witness, Defendant may not

14 offer substantive testimony from the witness.  If Defendant wishes to offer the unidentified

15 witness solely to authenticate documents, Defendant may use the witnesses identified only by

16 title for that limited purpose.

17 <u>VIII.  Exhibits</u>

18      The following is a list of documents or other exhibits that the parties expect to

19 offer at trial.  NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE

20 ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS

21 ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P.

22 16(e); Local Rule 16-281(b)(11).

23      <u>A.  Plaintiff's Exhibits</u> (Attached to Plaintiff's Pretrial Statement)

24         A.     Plaintiff's Discovery Documents.

25             1.     Defendant's responses to Plaintiff's request for admissions.

26             2.     Defendant's response to Plaintiff's second request for admissions.

27

28                        10

3.      Defendant's response to Plaintiff's interrogatories and request for production of documents plus attachments listed below.

    a.    Duties of Medical Assistant

    b.    Registered Nurse Post Orders

    c.    Title 15, Article 8, Section 3350, *et seq*.

    d.    Plaintiff's Offender History

    e.    Record of Daily Activity

B.    Plaintiff's Prison Medical Records.

    1.    Outpatient discharge instructions

    2.    Medical Reports dated April 19, 1999

    3.    Medical Reports dated April 20, 1999

    4.    California State Prison-Corcoran Hospital Admission History Dated April 26, 1999

    5.    Medical Reports for April 26, 1999

    6.    California State Prison-Corcoran Hospital Operative Report dated April 6, 1999

    7.    California State Prison-Corcoran Hospital Consultation

    8.    Physician's Orders from March 5, 1999 through April 30, 1999

C.    San Joaquin Community Hospital Medical Records.

    1.    Admitting History and Physical Examination

    2.    Surgical Consultation

    3.    Discharge Summary Report

    4.    Patient Care Report

    5.    CMO Discharge Notification

    6.    Emergency Blood Release

    7.    Progress Record from April 20, 1999

11

1          8.      Physician Discharge Instructions

2          9.      Emergency Department Record

3          10.     Transfusion Record

4          11.     Pathology Report dated April 20, 1999

5     D.   Receipts For Requests For Medical Records.

6     E.   Newspaper Articles and Computer Material.

7          1.      Newspaper Articles

8          2.      Medline Plus - Hypovolemic Shock

9          3.      West Shore Endoscopy Center - Liver Biopsy

10         4.      The Hippocratic Oath

11    F.   Defendant's December 17, 2004 Declaration.

12  B.  Defendant's Exhibits

13    A.   Abstract of Judgment dated December 5, 1994.

14    B.   Declaration of Linda Rianda dated January 9, 2002.

15    C.   Inmate Appeals Board Complaint Log for Plaintiff's appeals.

16    D.   Photographs of CSP-Cor Emergency Room.

17    E.   Plaintiff's complete medical records and file, including but not limited to:

18         1.  Consultation report re chronic hepatitis C

19         2.      Physician's Orders (CDC form 7221) dated March 5, 1999 and

20             May 4, 1999

21         3.      Operative report dated April 6, 1999

22         4.      SHU Mental Health Screening dated April 11, 1999

23         5.      Mental Health Interdisciplinary Progress Notes dated April 19,

24             1999

25         6.      Medical Report of Injury or Unusual Occurrence dated April 19,

26             1999

27

28                                  12

7.      Emergency Room Admission dated April 19, 1999

8.      Physician's Orders (CDC form 7221) dated April 19, 1999

9.      Medical Report of Injury or Unusual Occurrence dated April 20, 1999

10.     Emergency Room Admission dated April 20, 1999.

11.     Emergency Room Admission dated April 26, 1999

12.     Admitting Record dated April 26, 1999

13.     Admitting Assessment dated April 26, 1999

14.     Admission History and Physical Examination dated April 26, 1999

15.     Physician's Progress Notes for April 26 to April 30, 1999

16.     Physician's Orders for April 26 to April 30, 1999

17.     Nursing Care Records for April 26 to April 30, 1999

18.     Inmate Medication Records for April 26 to April 30, 1999

19.     Discharge Summary dated April 30, 1999

20.     Physician's Progress Notes for May 11, 1999 to February 10, 2000

21.     Physician's Orders for May 5, 1999 to January 21, 2000

22.     Mental Health Interdisciplinary Progress Notes dated May 27, 1999

23.     Mental Health Interdisciplinary Progress Notes dated July 25, 1999

24.     Medical Report of Injury or Unusual Occurrence dated August 18, 1999

25.     Inmate Medication Record for 1999

F.      Emergency Medical Services Patient Care Report dated April 20, 1999.

G.      Plaintiff's complete medical records from SJCH, including but not limited to:

1.      Emergency Department Record dated April 20, 1999

13

1          2.      Emergency Department Flow Sheet dated April 20, 1999

2          3.      Admitting History and Physical Examination

3          4.      Surgical Consultation

4          5.      Progress Records for April 20 to April 26, 1999

5          6.      Physician's Orders for April 20 to April 26, 1999

6          7.      Laboratory Test Reports for April 20 to April 26, 1999

7          8.      Discharge Summary

8          9.      Physician Discharge Instructions

9       H.      Inmate Segregation Record for April through August 1999.

10       I.      Registered Nurse Post Orders.

11       J.      Physician and Surgeon Duty Statement.

12       K.      Medical Technical Assistant Duty Statement.

13       L.      Declaration of Virginia Wright, Custodian of Medical Records.

14

15 IX.  Discovery Documents To Be Used At Trial (Answers To Interrogatories And Responses To Requests For Admissions)

16       A.  Plaintiff's Documents

17       1.      Defendant's responses to Plaintiff's request for admissions.

18       2.      Defendant's response to Plaintiff's second request for admissions.

19       3.      Defendant's response to Plaintiff's interrogatories and request for

20             production of documents.

21 X.  Further Discovery or Motions

22       No party anticipates any further discovery or motions at this time.

23       Even though discovery is closed, all parties are reminded of their continuing

24 obligation to update all discovery responses previously made if that party becomes aware of new

25 information or becomes aware that an answer in a previous response is incomplete or incorrect.

26 Fed. R. Civ. P. 26(e)(2).

27

28                14

1    If any party intends to file motions in limine, the procedure and time requirements

2  are set forth below.

3  XI.  Stipulations

4    None.

5  XII.  Amendments/Dismissals

6    None.

7  XIII.  Settlement Negotiations

8    There have been no settlement negotiations to date.  Plaintiff states that a court

9  settlement conference might be productive.  Defendant is willing to participate in a court

10  settlement conference.  However, Defendant notes that Plaintiff has an unrealistic view of the

11  value of his case, which will present a substantial impediment to any settlement negotiations.

12    At the telephonic trial confirmation hearing, the court will discuss the potential for

13  a settlement conference.

14  XIV.  Agreed Statement

15    No party believes that a presentation of some or all of the evidence by agreed

16  statement is feasible or advisable.

17  XV.  Separate Trial Of Issues

18    The issue of punitive damages will be bifurcated.

19  XVI.  Impartial Experts - Limitation Of Experts

20    Plaintiff requests the court to provide an impartial medical expert.   The Supreme

21  Court has declared that "the expenditure of public funds [on behalf of an indigent litigant] is

22  proper only when authorized by Congress"  United States v. MacCollom, 426 U.S. 317, 321

23  (1976).  The Ninth Circuit has found that the in forma pauperis statute, 28 U.S.C. § 1915, does

24  not provide for the payment of fees or expenses for witnesses.  See  Dixon v. Ylst, 990 F.2d 478,

25  480 (9th Cir. 1993); Tedder v. Odel, 890 F.2d 210, 211 (9th Cir. 1989).  While 28 U.S.C. 1915

26  provides for service to an indigent litigant witnesses, it does not waive payment of fees or

27

28    15

1   expenses for those witnesses.   Hadsell v. C.I.R., 107 F.3d 750, 752 (9th Cir. 1997).  The court

2   has reviewed the in forma pauperis statute and finds, as with other witnesses, the in forma

3   pauperis statute does not authorize the expenditure of public funds for the appointment of an

4   expert witness.  See 28 U.S.C. § 1915.

5          The district court has the discretion to appoint an expert pursuant to Rule 706(a)

6   of the Federal Rules of Evidence, which reads, in part, "The court may on its own motion or on

7   the motion of any party enter an order to show cause why expert witnesses should not be

8   appointed. . ." Fed. R. Evid. 706(a); Walker v. American Home Shield Long Term Disability

9   Plan, 180 F.3d 1065, 1071 (9th Cir. 1999).  Pursuant to Rule 702, "If scientific, technical, or

10  other specialized knowledge will assist the trier of fact to understand the evidence or to

11  determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

12  training, or education, may testify thereto in the form of an opinion or otherwise."  Fed. R. Evid.

13  702.   Payment for such an expert must be authorized by statute or shall be paid by the parties "in

14  such proprotation and at such time as the court directs, and thereafter charged in like manner as

15  other costs." Fed. R. Evid. 706(c).

16         The court finds that the legal issues involved in this action are not particularly

17  complex.  See Walker v. American Home Shield Long Term Disability Plan, 180 F.3d 1065,

18  1071 (9th Cir. 1999). Walker at 1071 (finding that the district court's decision to appoint an

19  independent expert to assist the court in evaluating contradictory evidence about an elusive

20  disease of unknown origin was appropriate); see also Ledford v. Sullivan, 105 F.3d 354, 359 (7th

21  Cir. 1997) (trier of fact's determination of deliberate indifference not so complicated that an

22  expert was required to establish pro se inmate's case).  The decision whether or not to admit

23  expert testimony does not rest upon the existence or strength of the expert's opinion but rather

24  whether the expert testimony will assist the trier of fact in drawing its own conclusion as to a fact

25  in issue. United States v. Rahm, 993 F.2d 1405, 1412 (9th Cir. 1993).  Here, the court finds that

26  the issues are not so complex as to require the testimony of an expert witness to assist the trier of

27

28                                              16

1    fact.

2          In addition, plaintiff is proceeding in forma pauperis and is, presumably, unable to

3    compensate an expert witness.  Pursuant to Rule 706, the court has discretion to apportion costs

4    in the manner directed by the court, including the apportionment of costs to one side.  See Fed.

5    R. Ev. 706(b).  In instances such as this, where the government would likely bear the cost, the

6    court should exercise caution.  The court has a burgeoning docket of civil rights cases filed by

7    prisoners proceeding pro se and in forma pauperis.  The facts of this case are no more

8    extraordinary and the legal issues involved no more complex than those found in the majority of

9    the cases now pending before this court.   It appears to the court that Plaintiff has not requested

10   an expert because one is needed to assist the court, but rather Plaintiff is requesting an expert

11   because he cannot afford to hire one.  Such circumstances fall outside of reasons for an expert

12   under Rule 706.  In light of the case law prohibiting payment of an expert because a Plaintiff is

13   indigent, Plaintiff's request for the appointment of an expert must be denied.

14   XVII.   Miscellaneous

15          A.     Defendant estimates a three-day jury trial.

16          B.     Defendant will submit motions in limine, proposed voir dire questions,

17                 and jury instructions as directed by the Court at the trial confirmation

18                 hearing.

19          C.     Defendant requests that the parties exchange documentary evidence thirty

20                 days before the trial date.

21          D.     Defendant seeks a stipulation from Plaintiff at the trial confirmation

22                 hearing that his claim against Defendant Hoffman is limited to the

23                 Defendant's actions on April 19, 1999.

24   XVIII.  Further Trial Preparation

25          A.  Telephonic Trial Confirmation Hearing

26          A telephonic trial confirmation hearing is set for September 22, 2008 at 3:30 p.m.

27

28                                              17

Counsel for Defendant is directed to arrange for telephone contact with Plaintiff, and shall initiate the call to (559) 499-5669. At the telephonic hearing, the court will address any pretrial matter raised by the parties.

B. Motions In Limine Hearing and Briefing Schedule

The parties have filed motions in limine. The court will hear and decide such motions on the morning of trial at 8:30 a.m.

Whether or not a party files a motion in limine, that party may still object to the introduction of evidence during the trial.

C. Duty of Counsel[1] to Pre-Mark Exhibits

The parties have conferred, for purposes of pre-marking and examining each other's exhibits. All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2). All of Plaintiff's exhibits shall be pre-marked with numbers. All of Defendant's exhibits shall be pre-marked with letters.

1. Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a) Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff by September 25, 2008, one for use by the Courtroom Clerk and the other for the court; and

(b) One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2. Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a) Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above. Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party,

---

[1] Counsel refers to Defendant's attorney and Plaintiff representing himself in pro se.

without further foundation.

(b)  As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiff's Exhibit 1 or Defendant's Exhibit A, and shall  be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

(c)  Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiff's Exhibit 2 - For Identification, or Defendant's Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d) Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiff's Exhibit 3 - For Identification or Defendant's Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3.  Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
| --- | --- | --- | --- | --- |

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.

The court has no objection to counsel using copies.  However, the copies must be legible.  If any document is offered into evidence that is partially illegible, the court may sua sponte exclude it from evidence.

D.  Discovery Documents

By September 25, 2008, each party shall file a list of all discovery documents the party intends to use at trial.  The list shall indicate whether each discovery document has

19

previously been lodged with the Clerk.  If the discovery document has not been previously

lodged, the party shall so lodge the document with the Courtroom Clerk by September 25, 2008.

E.  Voir Dire

The parties shall file and serve proposed voir dire questions, if any, by September

25, 2008.

Further, in order to aid the court in the proper voir dire examination of the

prospective jurors, counsel should lodge with the court on the first morning of trial a list of all

prospective witnesses, including rebuttal witnesses, that counsel reasonably expect to call.  The

purpose of the lists is to advise the prospective jurors of possible witnesses to determine if a

prospective juror is familiar with any potential witness.

F.  Use Of Videotape and Computers

Any party wishing to use a videotape for any purpose during trial shall lodge a

copy of the videotape with the Courtroom Clerk by September 25, 2008.  If a written transcript of

audible words on the tape is available, the court requests that the transcript be lodged with the

court, solely for the aid of the court.

If counsel intends to use a laptop computer for presentation of evidence, they shall

contact the courtroom deputy clerk at least one week prior to trial.  The courtroom deputy clerk

will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a

representative of the Information and Technology Department and receive a brief training session

on how counsel's equipment interacts with the court's audio/visual equipment.  If counsel

intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when

preparing the presentation.

G.  Agreed Summary Of The Case

The parties shall lodge with the Courtroom Clerk a joint agreed summary of the

case, briefly outlining the positions of the parties by September 25, 2008.  The summary will be

read to the jury panel at the outset of the trial solely for the purposes of assisting in the jury

20

selection process.  The contents of the summary shall not be deemed to be evidence or an admission or stipulation by a party as to any contested fact or issue.

### H.  Morning Conferences During Trial

During the trial, it is the obligation of counsel to meet with the court each morning to advise the court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled upon.  The court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well.  The court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by counsel will eliminate the need for that result.

### G.  Order Of Witnesses

In order to make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call at each trial session.

### XIX.  Objections to Pretrial Order

Any party may, within ten (10) calendar days after the date of service of this Order, file and serve written objections to any of the provisions of this Order.  Such objections shall specify the requested modifications, corrections, additions or deletions.

### XX.  Rules of Conduct During Trial

#### A.  General Rules

1.  All participants in the trial shall conduct themselves in a civil manner.  There shall be no hostile interchanges between any of the participants.

2.  All oral presentations shall be made from the podium, unless otherwise permitted by the court.

21

3. Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

4. Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

B.  Jury Selection

1. The court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the court has concluded its questioning of the jury panel.  In some circumstances, the court may allow brief direct questioning by counsel.

C.  Opening Statements

1. Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

D.  Case in Chief

1. Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2. At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

E.  Witnesses

1. Before approaching a witness, counsel shall secure leave of court to approach the witness.

2. Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

F.  Exhibits

1. All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2.  An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3.  The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

G.  Objections

1.  No speaking objections or arguments are permitted in the presence of the jury. Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated.  The court will permit counsel to argue the matter at the next recess.

2.  The court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

H.  Closing Argument

1.  Counsel may use visual aids in presenting the closing argument.  However, any proposed visual aids shall be shown to opposing counsel before closing argument.

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

IT IS SO ORDERED.

**Dated:   August 12, 2008**          /s/ Anthony W. Ishii
                                  CHIEF UNITED STATES DISTRICT JUDGE

23